UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RALPH HARDY, JR.,

                                        Plaintiff,

            vs.                                                        9:08-CV-1352
                                                                       (GLS/ATB)
PEDRO DIAZ, *et al.*,

                                        Defendants.

_____

RALPH HARDY, JR., Plaintiff *pro se*
RICHARD LOMBARDO, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

     This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, United States District Judge.  The case was re-assigned to me on January 4, 2010, upon the retirement of Magistrate Judge Gustave J. Di Bianco.

     In this civil rights complaint (Dkt. No. 1), plaintiff alleges that, while he was an inmate in the custody of the Mid-State Correctional Facility ("Mid-State"), defendants denied him constitutionally adequate medical care by delaying his treatment for the Hepatitis-C virus (HCV).  Plaintiff also alleges, in conclusory fashion, that the defendants violated his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act (RA), 29 U.S. C. § 794.[1]  He seeks

_____

     [1] The complaint also references due process and equal protection in describing the constitutional rights of plaintiff that were allegedly violated by defendant Rabinowitz.  Plaintiff further suggests that the delays in his treatment resulted, at least in part, from Dr. Rabinowitz's retaliation for grievances and administrative complaints that plaintiff filed against the doctor.

substantial damages.

Presently before this court is the motion of the remaining defendants[2] to dismiss plaintiff's complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 13).  After defendants' motion was filed, plaintiff filed a group of "exhibits in support of complaint" (Dkt. No. 14) and a memorandum in opposition to defendants' motion (Dkt. No. 18).  For the following reasons, this court recommends that the plaintiff's complaint be dismissed without prejudice, except with respect to the claim of constitutionally inadequate medical care against Dr. Rabinowitz.

## I.    **Facts and Contentions**

Plaintiff was under the care of the medical staff at Mid-State for HCV from December 16, 2007 through December 2008, when he filed his complaint.  (Compl. ¶¶ 12, 13).  He alleges that, from January through April 2008, the defendants consistently denied him treatment, such as "blood work," necessary to treat his HCV.  (Compl. ¶ 14).  On April 1, 2008, plaintiff filed a grievance complaining of inadequate medical treatment for his HCV and the resulting "pain and mental stress."  (Compl. ¶ 15; Dkt. No. 14 at 11).[3]  In response to plaintiff's complaints, the defendants claimed that they could not find his medical records and that Dr. Rabinowitz terminated plaintiff's HCV

---

[2] Judge Sharpe previously dismissed Mid-State Correctional Facility as a defendant (Dkt. No. 4), leaving Regional Health Services Administrator Pedro Diaz, Mid-State Medical Director Marvin Rabinowitz, and Mid-State Superintendent William Hulihan.

[3] Plaintiff alleges that Superintendent Hulihan belatedly "accepted" the grievance (Compl. ¶ 23); but neither the complaint (Dkt. No. 1, filed on December 17, 2008), nor the "exhibits in support of the complaint" (Dkt. No. 14, filed on August 31, 2009) appear to include any documentation of the disposition of this grievance.

treatment because he failed to keep his medical appointments.[4]  (Compl. ¶¶16, 18).  However, on April 5, 2008, plaintiff "realized" that Dr. Rabinowitz had terminated his treatment because of the grievance plaintiff filed on April 1st.  (Compl. ¶ 17).

On April 8, 2008, Dr. Rabinowitz ordered a particular HCV-related test and determined that plaintiff's results were "'[a]bnormal.'"  (Compl. ¶ 20).  Nonetheless, plaintiff claims that the doctor still declared that "'no action [was] required at this time' because Plaintiff had not completed an Alcohol and Substance Abuse Treatment program coupled with his personal animus towards plaintiff."  (Compl. ¶ 21).[5]  The medical staff at Mid-State took blood samples from plaintiff on April 28th and 29th and, on May 11, 2008, sent him for a liver biopsy.  (Compl. ¶¶ 24-26; Dkt. No. 14 at 27).  Plaintiff alleges he received no further treatment in May or June of 2009, during which time plaintiff "suffered severe pain, anxiety, and migraine headaches."  (Compl. ¶ 27).

On July 18, 2008, plaintiff started receiving treatment for HCV, but on August 4th, Dr. Rabinowitz stopped the treatment.  (Compl. ¶¶ 28-29).  Plaintiff filed a grievance with respect to the termination of his treatment on August 5, 2008 (Dkt. No. 14 at 13), which was accepted by the Inmate Grievance Review Committee, to the extent that it recommended that plaintiff should be re-evaluated for continuing

---

[4] Plaintiff claims that he reported to his medical appointments when he was reminded by a correctional officer.  (Compl. ¶ 19).

[5] In paragraphs 20 and 21 of his complaint, plaintiff cites, and purports to quote from, an "Exhibit A" but no exhibits were attached to his pleading.  The exhibits belatedly filed by plaintiff in support of his complaint (Dkt. No. 14) do not appear to include the document referred to as Exhibit A in the complaint.

treatment.  (Compl. ¶¶ 30-31; Dkt. No. 14 at 26).  On September 5, 2008,

Superintendent Hulihan issued a decision with respect to this grievance, noting that

Dr. Rabinowitz terminated plaintiff's treatment because he failed to attend a medical

evaluation on August 4, 2008.  The Superintendent further stated that Dr. Rabinowitz

saw the plaintiff to discuss his treatment on August 8th and that future lab work and

medical visits were scheduled.  Defendant Hulihan concluded that there was

insufficient evidence to support plaintiff's claim of malfeasance by the medical staff,

and advised plaintiff to attend his scheduled medical "call-outs" in order to avoid

similar difficulties in the future.  (Dkt. No. 14 at 25; Compl. ¶ 32).  Plaintiff appealed

his grievance, and the Central Office Review Committee affirmed the finding of

Superintendent Hulihan, noting that laboratory work relating to the plaintiff had been

performed on three dates in August and September 2008.  (Dkt. No. 14 at 24; Compl.

¶ 33).

On September 9, 2008, plaintiff wrote a complaint to the Chief Medical Officer

of the Department of Correctional Services ("DOCS"), who referred the matter to

Regional Health Services Administrator (RHSA) Pedro Diaz for investigation and

response.  (Compl. ¶ 34).  Defendant Diaz "contacted Plaintiff and confirmed that

Plaintiff's treatment was discontinued because he 'acted in an argumentive [sic]

manner and because Plaintiff had '[n]ot appeared for regular monitoring of [his] blood

work.'"  (Compl. ¶ 35; Dkt. No. 14 at 5).[6]

---

[6] Defendant Diaz wrote a letter to plaintiff dated May 11, 2009 (Dkt. No. 14 at 5),
apparently in response to a subsequent, but similar complaint by plaintiff.  The written response
is generally consistent with the characterization of RHSA Diaz's September 23, 2008 response,

The complaint alleges that defendant Rabinowitz was deliberately indifferent to plaintiff's serious medical needs for HCV treatment, in violation of his rights under the Eighth Amendment, the ADA, and the RA, as well as his due process and equal protection rights.[7]  Plaintiff further claims that defendants Hulihan and Diaz failed to adequately instruct, supervise, control, and discipline Dr. Rabinowitz during that time that he was unconstitutionally denying plaintiff necessary medical treatment.

## II.   **Motion to Dismiss**

Defendants move to dismiss the complaint, arguing (1) that plaintiff is claiming mere disagreement with the medical judgment of DOCS physicians regarding appropriate treatment and has not alleged any facts demonstrating "deliberate indifference" on the part of any defendant; (2) that defendants Hulihan and Diaz were not personally involved in plaintiff's medical care and cannot be liable for damages under Section 1983; (3) that the plaintiff's conclusory references to the ADA, the RA, and retaliation fail to state a claim; and (4) that all of the defendants are entitled to qualified immunity.

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its

---

summarized in the complaint.  (Compl. ¶ 23).

[7] In his memorandum in response to defendants' motion (Dkt. No. 18), plaintiff claims that he still has not received "any treatment" as of September 18, 2009.  The exhibits filed on August 31, 2009 in support of his complaint include a number of additional grievances filed by plaintiff with respect to medical care issues.  The DOCS responses to the grievances state that plaintiff's medical care was being handled pursuant to DOCS HCV protocols, but that certain treatments were discontinued, at least in part because plaintiff was uncooperative and non-compliant with prison medical staff.  (Dkt. No. 14 at 18-23).

face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl.*
*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements
of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.*
(citing *Bell Atl. Corp*., 550 U.S. at 555).  Plaintiff's factual allegations must also be
sufficient to give the defendant "`fair notice of what the . . . claim is and the grounds
upon which it rests.'"  *Bell Atl. Corp*., 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the
factual allegations contained in the complaint and draw all reasonable inferences in
the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations
omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.
1995).  The court must heed its particular obligation to treat pro se pleadings with
liberality.  *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*,
171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the
complaint upon which the plaintiff relied in drafting his pleadings, as well as any
documents attached to the complaint as exhibits and any statements or documents
incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d
Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the
court may take into consideration documents referenced in or attached to the
complaint in deciding a motion to dismiss, without converting the proceeding to one
for summary judgment).  In this case, although plaintiff's supporting exhibits (Dkt.
No. 14) were filed well after his complaint, many of them are referred to and relied

6

upon in the complaint and, thus, will be considered by this court in resolving the motion.

This court concludes that, under the liberal standards applicable to a motion to dismiss a *pro se* complaint, the pleading states a facially plausible cause of action against Defendant Rabinowitz for deliberate indifference to plaintiff's serious medical needs.  Otherwise, the complaint fails to state a viable cause of action against the other defendants or on any of the other possible constitutional or statutory grounds referenced by plaintiff.  Accordingly, this court recommends that the complaint be dismissed, without prejudice, except as to the Eighth Amendment/medical care claim against Defendant Rabinowitz.

## III.   Claims of Inadequate Medical Care

### A.   Legal Standards

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind.  *Id.* at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### 1.   Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)). If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the plaintiff is receiving ongoing treatment, and the issue is an unreasonable delay or interruption of the treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). Thus, the court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for an Eighth

Amendment claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability.  *Id.* at 280.

### 2.    Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind."  *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).  In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care.  *Id.* (citing *Farmer*, 511 U.S. at 835-37).  Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id*.  Deliberate indifference is equivalent to subjective recklessness.  *Id.* (citing *Farmer*, 511 U.S. at 839-40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety.  *Id.* (citing *Chance*, 143 F.3d at 702).  The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844.  Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a

9

defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates.  *Id.* (citations omitted).  An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation.  *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107).  Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate.  *Id.  See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983).  Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

### B.    Application of Legal Standards

Defendants assert that the complaint alleges nothing to suggest that, in treating plaintiff, any defendant acted or failed to act knowing of and disregarding a substantial risk of serious harm to plaintiff.  They argue that, apart from conclusory allegations, plaintiff's claim of deliberate indifference is predicated on mere

10

disagreement with the medical judgment of Dr. Rabinowitz to discontinue plaintiff's HCV treatment.  However, under the liberal standards for construing a *pro se* complaint in the context of a motion to dismiss, plaintiff has alleged enough to state a facially plausible claim that Defendant Rabinowitz acted with deliberate indifference to plaintiff's serious medical needs.

There can be little doubt that HCV is a serious medical condition.  In a prior action in this district, DOCS defendants submitted an expert declaration from a gastroenterologist who stated that HCV can cause cirrhosis of the liver and is the leading cause of liver cancer in the United States.  *See Motta v. Wright*, 9:06-CV-1047 (NJM/GJD), 2009 WL 1437589 at *6, 2009 U.S. Dist. LEXIS 42632 (N.D.N.Y. May 20, 2009).  The same expert noted that because the typical drug therapies for HCV can cause serious (and sometimes life-threatening) side effects, patients must be carefully evaluated to determine if they are good candidates for treatment.  *Id.*  Because of all of the variables regarding whether HCV drug treatment is appropriate, and because of the substantial number of inmates infected with HCV, DOCS developed a "protocol" to guide its medical staff in determining whether a particular inmate with HCV should undergo drug treatment.  *Id.*[8]  The Second Circuit has noted the opinion of some doctors that the destructive effects of HCV on the liver can take many years, and held that, at least in cases where the progression of a patient's HCV has been investigated, even lengthy delays in starting HCV treatment may not create a risk of serious medical

---

[8] The "Hepatitis C Primary Care Practice Guideline" used by DOCS was initially approved on March 31, 1999 and has been revised a number of times since.  *Id.*

harm. *Salahuddin v. Goord*, 467 F.3d at 281-282.  But, in the context of a motion to dismiss, the complaint, even though somewhat conclusory as to the actual or potential harm to plaintiff from the delays and interruptions in his treatment for HCV, adequately alleges that his serious medical needs were not met.  *Erickson v. Pardus*, 551 U.S. at 93-94 (allegations of *pro se* inmate that removal from HCV treatment endangered his life, even if conclusory, were sufficient to plead that he suffered a cognizable independent harm).[9]

The complaint is not a model of clarity or consistency.  However, it can be construed to allege that, notwithstanding plaintiff's "abnormal" HCV test results, Dr. Rabinowitz refused to start him on HCV treatment between January and April 2008 because plaintiff filed a grievance against the doctor on April 1st and/or because plaintiff had not completed the Alcohol and Substance Abuse Treatment (ASAT) program.  (Compl. ¶¶ 15-21).  In the absence of additional facts, it is not clear at what point in time Dr. Rabinowitz had sufficiently evaluated the progression of plaintiff's HCV to be able to make a medical judgment as to whether plaintiff was a suitable candidate for drug therapy or whether a delay in starting such treatment could create a serious risk of harm to plaintiff.  By April 2008, the DOCS protocol for evaluating HCV patients no longer instructed medical personnel to withhold HCV treatment based on an inmate's failure to complete the ASAT program, *Motta v. Wright*, 2009

---

[9] The Supreme Court, whose ruling implicated only the objective component of the deliberate indifference standard, remanded the case for further consideration.  On remand, the Tenth Circuit held that the complaint was sufficient in pleading both the objective and the subjective components of the Eighth Amendment standards for medical care.  *Erickson v. Pardus*, 238 Fed. Appx. 335, 2007 WL 1636290 (10th Cir. 2007).

WL 1437589 at *12[10].  So if, as alleged, Dr. Rabinowitz's reason for withholding HCV treatment was plaintiff's failure to complete the ASAT program, the doctor was contravening DOCS medical policy.  And, if, as the complaint suggests, Defendant Rabinowitz withheld treatment, not based on his medical judgment, but because plaintiff filed a grievance against the doctor, that would support a facially plausible claim for "deliberate indifference" sufficient to defeat a motion to dismiss.[11]

_____

[10] ". . . [I]n *Hilton v. Vasquez*, 235 F.R.D. 40 (N.D.N.Y.2006), District Judge David N. Hurd certified a class of inmates who had been denied HCV treatment based upon their failure to complete a DOCS-sponsored substance abuse program. *Id.* at 50-54. By memorandum [in October 2005], [DOCS Chief Medical Officer Lester] Wright had voluntarily rescinded the requirement. . . . *Id.* at 46-50. The parties entered into an interim settlement agreement in July of 2007, and on January 2, 2008, Judge Hurd approved the interim agreement as a final settlement agreement. *Hilton v. Vasquez*, 9:05-CV1038, 2008 WL 53670, 2008 U.S. Dist. LEXIS 461 (N.D.N.Y. Jan. 2, 2008).  The settlement required DOCS to reevaluate any prisoner who was denied treatment for HCV "because of" the ASAT program. Id. at *3." *Id.* The settlement was binding on the class as to claims for equitable relief, but did not have any affect on pending or subsequent actions for non-equitable relief.  (Interim Settlement Agreement, 9:05-CV1038, Dkt. No. 48 ¶ 8).

[11] Although the complaint indiscriminately references a variety of constitutional and statutory rights that plaintiff claims were violated by the defendants, the complaint does not appear to even attempt to articulate a First Amendment retaliation claim.  In order to establish such a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants.  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).  The court must keep in mind that claims of retaliation are "easily fabricated"and  "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration."  Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* Even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.*  The conclusory allegation that Dr. Rabinowitz was influenced in denying plaintiff medical treatment by his grievances against the doctor are appropriately considered within the ambit of the explicit Eighth Amendment medical claim.  In any event, if plaintiff was trying to plead a retaliation claim, his vague and inconsistent allegations are clearly insufficient.  For example, the complaint states that plaintiff "realized," on April 5, 2008, that Dr. Rabinowitz had denied his HCV treatment, between January 2008 and April 1, 2008, because of the grievance plaintiff filed on April 1, 2008.  (Compl. ¶¶ 14-17).  It is clear that plaintiff's April 1st grievance could not have been a motivating factor in Dr. Rabinowitz's treatment decisions in the months

The complaint further alleges that, after ordering blood tests and a liver biopsy, Dr. Rabinowitz finally started plaintiff on HCV treatment on July 18, 2008, but terminated the treatments on August 4, 2008.  (Compl. ¶¶ 24-29).  DOCS responses to plaintiff's grievance indicate that plaintiff's treatment was terminated because he missed a medical appointment on August 4th.  (Dkt. No. 14 at 25).  Although plaintiff apparently underwent additional tests and had other medical appointments thereafter, (Dkt. No. 14 at 25), the HCV treatment was not resumed by December 2008, when plaintiff filed his complaint (or, perhaps, even by September 2009, when he filed his response to defendant's motion (Dkt. No. 18)).  The grievance documents referenced or supplied by plaintiff suggest that his treatment was not resumed because of missed appointments and his lack of cooperation and compliance with the medical staff.  (Compl. ¶ 35; Dkt. No. 14 at 5, 24-25).[12]  The plaintiff does not specifically address most of the reasons for discontinuation of treatment stated by various DOCS officials in the documents referenced in the complaint.  However, a liberal construction of the complaint would suggest that plaintiff is alleging that Dr. Rabinowitz was primarily motivated by other, retaliatory or improper motives.  While the defendants may be

_____

prior to April 1st.

[12] If plaintiff, in fact, skipped medical appointments and failed to comply with the treatment directions of the medical staff, it could undermines his claim of deliberate indifference on the part of the DOCS physician.  *See, e.g.*, *Amin v. County of Onondaga New York*, 5:02-CV-320 (HGM/GHL), 2006 WL 1650764 at *8, 2006 U.S. Dist. LEXIS 41978 (N.D.N.Y. Jun 13, 2006) (plaintiff's non-compliance with medical advice and treatment supported summary judgment on deliberate indifference claim); *Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986) (plaintiff's history of declining treatment by prison doctors undermined his claim that they were deliberately indifferent in failing to treat his back issues).

able to marshal facts in a summary judgment motion to undermine plaintiff's claim that defendant Rabinowitz acted with deliberate indifference in denying or delaying his HCV treatment, the complaint, liberally construed, states a facially plausible Eighth Amendment cause of action against this defendant. *See Erickson v. Pardus*, 551 U.S. at 93-94, on remand, 238 Fed. Appx. at 335 (*pro se* complaint stated a claim under both the objective and subjective components of the deliberate indifference standard even though the complaint apparently acknowledged the stated reasons of the prison medical staff for terminating the inmate's HCV treatment–one of the needles dispensed to the inmate for injecting HCV medication was found under circumstances leading prison officials to believe the inmate intended to use illegal controlled substances).

## IV.   **Personal Involvement**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)(citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction.  *Id.*  The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the

15

wrong.  *Id.*  Personal involvement may also exist if the official created a policy or

custom under which unconstitutional practices occurred or allowed such a policy or

custom to continue.  *Id.*  Finally, a supervisory official may be personally involved if

he or she were grossly negligent in managing subordinates who caused the unlawful

condition or event.  *Id.  See also Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007)

(citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Defendants correctly argue that the complaint fails to allege sufficient personal

involvement of Regional Health Services Administrator Pedro Diaz and Mid-State

Superintendent William Hulihan in the alleged constitutional violations to state a

claim for damages against them under Section 1983.  With respect to defendant

Hulihan, the only specific allegation against him is that he upheld the response of the

Mid-State Grievance Committee to one or more of plaintiff's grievances regarding his

medical care.   (Complaint ¶¶ 23, 32; Dkt. No. 14, at 25).  It is clear that "affirming the

administrative denial of a prison inmate's grievance by a high-level official is

insufficient to establish personal involvement under section 1983[,]" particularly if the

grievance involves medical care and the reviewer has no medical training.  *Manley v.*

*Mazzuca*, 01CV5178, 2007 WL 162476 at *10, 2007 U.S. Dist. LEXIS 4379

(S.D.N.Y. January 19, 2007), (citing *Foreman v. Goord*, 02 Civ. 7089, 2004 WL

1886928, at *7, 2004 U.S. Dist. LEXIS 16759 (S.D.N.Y. Aug. 23, 2004) ("The fact

that [the prison superintendent] affirmed the denial of plaintiff's grievances is

insufficient to establish personal involvement."); *Joyner v. Greiner*, 195 F. Supp. 2d

500, 506 (S.D.N.Y. 2002)).[13]  *See also Brock v. Wright,* 315 F.3d 158, 164 (2d Cir.
2003) (prison superintendent with no medical training who deferred completely to a
prison doctor in ruling on a grievance regarding medical care, while perhaps
negligent, was not "deliberately indifferent").  The Superintendent cannot be liable
under Section 1983 for failure to supervise the prison medical staff, because he lacks
the medical training and authority to do so.  *See, e.g., Cuoco v. Moritsugu*, 222 F.3d
99, 111 (2d Cir. 2000) (The failure of non-doctors at a prison to intercede in the
medical treatment of an inmate in not unreasonable, because they lack the authority to
intervene in medical decisions.)

Plaintiff's only specific allegation against Defendant Diaz is that he responded
to plaintiff's complaint to the DOCS Medical Director regarding the discontinuation
of his HCV treatment.  RHSA Diaz's response merely sets forth the treating doctor's
reasons for stopping treatment and clearly reflects substantial deference to the medical
judgment of the treating doctor at Mid-State.  (Compl. ¶ 35, Dkt. No. 14 at 5).  In the
absence of any indication in the complaint that Defendant Diaz had any reason to
suspect that the facility medical staff was not treating plaintiff appropriately, this
limited involvement is not sufficient to establish liability on the part of Defendant
Diaz for damages under Section 1983.  *See, e.g., Brock v. Wright,* 315 F.3d at 165

---

[13] "[I]t is not alleged that [the superintendent] is a doctor, or that he personally provided
(or was capable of providing) plaintiff with medical care.  Rather, it is alleged that he affirmed
denial of a grievance against the two doctors for failing to provide care.  But a prison
administrator is permitted to rely upon and be guided by the opinions of medical personnel
concerning the proper course of treatment administered to prisoners, and cannot be held to have
been 'personally involved' if he does so." *Id.*

(member of DOCS Central Office Review Committee was not liable under Section 1983 for deferring to the judgment of a DOCS physician with respect to a medical care issue where there was no indication the committee had reason to suspect the doctor might not be responsive to the plaintiff's true medical needs); *Moore v. Wright*, No. 05-CV-13 (TJM/DRH), 2008 WL 4186340 at *6-*7, 2008 U.S. Dist. LEXIS 73702 (N.D.N.Y. September 10, 2008) (DOCS official who, on behalf of the Chief Medical Officer, affirmed a previous medical decision by a regional medical director, did not have sufficient personal involvement to be liable for unconstitutional medical care). As a regional DOCS official, RHSA Diaz did not have the ability or authority to supervise the day-to-day conduct of the medical staff at a particular facility.  Nor was he responsible for the development of the HCV protocol of DOCS[14] and thus cannot be liable to the extent plaintiff's complaint might be construed as a challenge to any aspect of the protocol.[15]

---

[14] The DOCS HCV protocol was developed under the authority of DOCS Chief Medical Officer Lester Wright with input from a task force of physicians and other health professionals, including DOCS practitioners, and experts from medical colleges and hospitals.  *Motta v. Wright*, 2009 WL 1437589 at *7; *Hilton v. Vasquez*, 235 F.R.D. 40.

[15] To the extent plaintiff is alleging that these defendants failed to adequately investigate his complaints, it is clear there is no constitutional right to an investigation by government officials.  *Nieves v. Gonzalez*, 05-CV-00017, 2006 WL 758615 at *4, 2006 U.S. Dist. LEXIS 24302 (W.D.N.Y. March 02, 2006) (collecting cases).  *See also Smart v. Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006) (the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement); *Greenwaldt v. Coughlin*, No. 93 Civ. 6551(LAP), 1995 WL 232736, at *4, 1995 U.S. Dist. LEXIS 5144 (S.D.N.Y. Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.").

## V.   Miscellaneous Claims

### A.   Due Process and Equal Protection Claims

Plaintiff's complaint suggests vague due process and equal protection causes of action arising from the alleged denial of medical treatment.  However, the complaint provides no clue as to how plaintiff believes he was treated differently than other similarly situated individuals or what protected liberty interest he claims to have been deprived of without due process.  This court concludes that these causes of action are mis-pled and essentially duplicates plaintiff's Eighth Amendment claim that Dr. Rabinowitz was deliberately indifferent to his serious medical needs in withholding HCV treatment.  *See, e.g.  Lighthall v. Vadlamudi*, 9:04-CV-721, 2006 WL 721568 at *15-16, 2006 U.S. Dist. LEXIS 74737, 2006 U.S. Dist. LEXIS 74734 (N.D.N.Y. Mar. 17, 2006) (Fourteenth Amendment due process and equal protection claims based on alleged indifference to plaintiff's medical needs were "disguised" Eighth Amendment claims and would be treated as such)*; Toney v. Goord*, 04-CV-1174, 2006 WL 2496859 at *12, 2006 U.S. Dist. LEXIS 60987 (N.D.N.Y. Aug. 28, 2006) (equal protection claim that prison doctor refused to treat inmate "drug addict" while he was in segregated housing as a result of his illegal use of narcotics would be addressed as an Eighth Amendment medical care claim).

### B.   ADA and RA Claims

The complaint references the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) and claims, in conclusory fashion, that the defendants violated plaintiff's rights under these statutes.  While the defendants must be sued in

19

their individual capacities for purposes of section 1983, defendants may not be sued in their "individual" capacities for violations of the ADA or the RA. *Garcia v. S.U.N.Y. Health Science Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  Thus, any suit for statutory relief would be against the defendants in their "official" capacities. Without resolving whether the Eleventh Amendment in this case would bar damage relief against the State–defendants in their "official" capacities–the court finds that plaintiff does not state a claim under the ADA or the RA.  *See e.g. Farid v. Demars*, 9:06-CV-1545 (TJM/GJD), 2009 WL 455450 at *4-*5, 2009 U.S. Dist. LEXIS 13949 (N.D.N.Y. Feb. 23, 2009) (citing *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007 (D. Ohio 2004)).

In *Carrion*, the court specifically stated that the ADA and RA "afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities."  *Id.*  Plaintiff in this case is only challenging the medical treatment of his underlying medical condition.  Therefore, he can not proceed under either the ADA or the RA.

## VI.   Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's]

conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201(2001),

modified by *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 811 (2009) (holding that,

"while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be

regarded as mandatory in all cases").  The Court may also examine "whether the right

was clearly established . . . in light of the specific context of the case, not as a broad

general proposition." *Saucier*, 533 U.S. at 201.  However, "[i]f no constitutional right

would have been violated were the allegations established, there is no necessity for

further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

With respect to defendant Rabinowitz, this court finds that the complaint states

a facially plausible claim that the doctor was deliberately indifferent to serious

medical needs of the plaintiff under the Eighth Amendment.  Given that the Eighth

Amendment right with respect to medical care is clearly established, that claim is not

subject to dismissal against Defendant Rabinowitz on qualified immunity grounds.

The Court has concluded in this case that the complaint does not allege a viable

claim that defendants Diaz and Hulihan violated any constitutional or statutory rights

of the plaintiff or that Defendant Rabinowitz violated plaintiff's due process or equal

protection rights, or his rights under the ADA or the RA.  Thus, the Court need not

address qualified immunity as to those defendants and claims.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that Defendant Rabinowitz's motion to dismiss the claim

against him for deliberate indifference to plaintiff's serious medical needs under the

Eighth Amendment be DENIED; and it is further

**RECOMMENDED**, that defendants' motion to dismiss the complaint with respect to all other defendants and claims (Dkt. No. 13) be GRANTED, and the complaint dismissed as to those defendants and claims, without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: March 30, 2010

Hon. Andrew T. Baxter
U.S. Magistrate Judge

22